UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEVIN L. SAGO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:17 CV 1097 RWS |
| TROY STEELE, | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Petitioner Kevin Sago petitions for habeas corpus relief pursuant to 28 U.S.C. § 2254. Sago is an inmate at Algoa Correctional Center, in Jefferson City, Missouri. He is serving time for a first-degree assault. Sago pleaded guilty to the first degree assault charge in 2011 and was sentenced to ten years and six months' imprisonment. After serving a portion of his sentence, the state court suspended Sago's sentence and placed him on five years' probation. In 2014, Sago was arrested for second-degree robbery, which would violate the terms of his probation. After a hearing on November, 5, 2014, the court revoked Sago's probation.

Sago argues that he is entitled to habeas corpus relief because, in revoking his probation, the state court violated federal due process requirements outlined in Morrissey v. Brewer, 408 U.S. 471, 486-86 (1972). He also argues that he suffered

ineffective assistance of counsel. The state argues (1) that Sago failed to exhaust his state court claims. I will deny Sago's petition because he does not demonstrate that the state court's actions are contrary to clearly established federal law or based on an unreasonable determination of the facts.

## BACKGROUND

In June 2014, Kevin Sago was arrested for second-degree robbery, which would violate his probation. After Sago's arrest, the New Madrid County Prosecutor moved to revoke Sago's probation. During his revocation proceedings and proceedings for the new criminal charge, Sago was represented by Amanda Altman of the Missouri Public Defender's Office. The New Madrid Circuit Court scheduled an initial revocation hearing for July 22, 2014. At Sago's request, the state court granted continuances for the hearing four separate times, finally holding the hearing on November 5, 2014.

During the November 5 hearing, Altman examined witnesses, cross-examined the state's two witnesses, and made arguments on Sago's behalf. Id. In his own testimony, Sago contended that he had not been involved in any robbery or attempted robbery, and he disputed evidence presented by the prosecution. After considering "the credibility of the witnesses" and summarizing their conflicting testimony, Missouri State Circuit Judge Copeland found that Sago was in violation of his probation at "the very least by being an accessory… for this attempted

robbery....”[1] Id. at 44. The court issued a judgment on the same day, finding Sago "in violation of probation, and after considering the alternatives" revoked probation. (ECF No. 1-8, p. 2.)

On August 14, 2015, Sago filed a petition for writ of habeas corpus in the Circuit Court of St. Francois County, Missouri. (ECF No. 1-9.) In a memorandum, order, and judgment, the circuit court denied his petition. (ECF No. 1-13.) Sago appealed to the Missouri Court of Appeals, which also denied his petition in an order issued on February 1, 2016. (ECF No. 1-14.) Sago declined to seek discretionary review from the Missouri Supreme Court. Instead, he filed a petition for habeas corpus in this court on March 24, 2017.

## LEGAL STANDARD

Habeas petitions attacking custody in state courts can be granted only if they are (1) contrary to clearly established federal law or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Instead, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; Estelle v. Maguire, 502 U.S. 62, 67–68 (1991). In

---

[1] During the hearing, Judge Copeland incorrectly stated a witness, Bradley Johsnon's, name when finding that Sago had been an accessory for attempted robbery. Johnson was not before the court as a defendant in this proceeding, and the context of the statements makes it clear that Judge Copeland found that Sago had been an accessory for attempted robbery.

3

his petition, Sago alleges violations of state and federal procedural requirements. Pursuant to 28 U.S.C. § 2254(d), I only consider allegations that the state court acted contrary to federal law or made an unreasonable determination of facts.

## ANALYSIS

I. **Exhaustion**

When petitioning for habeas corpus relief, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002). In meeting this requirement "state prisoners [must] file petitions for discretionary review," with the state's highest court. O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999). This requirement only applies "when that review is part of the ordinary appellate review procedure…." Id. In contrast, when there is "a clear indication that the standard process is complete," then a petitioner need not file a petition for discretionary review. Dixon v. Dormire, 263 F.3d 774 at 780 (8th Cir. 2001) (quoting Ford v. Georgia, 498 U.S. 411, 423-24, (1991)).

The state argues that Sago failed to exhaust his claims because he did not petition the Missouri Supreme Court for habeas corpus relief. In Missouri, a party has two opportunities to petition for a transfer of his case to the Missouri Supreme Court. First, a party can petition the Missouri Court of Appeals to transfer his case

4

to the state's highest court. Missouri Supreme Court Rule 83.02. If that petition is denied, a party can petition the Missouri Supreme Court to transfer the case by its own action. Missouri Supreme Court Rule 83.04. Rule 83.04, however, contains the explicit disclaimer that "[t]ransfer by this Court is an extraordinary remedy that is not part of the standard review process for purposes of federal habeas corpus review." Based on this provision, the United States Court of Appeals for the Eighth Circuit has held that a petitioner need not petition for transfer to the Missouri Supreme Court to have exhausted his state court remedies. Randolph v. Kemna, 276 F.3d 401, 404-05 (8th Cir. 2002). This holding is written broadly to suggest that it addresses Rule 83.04 and 83.02: "Missouri law" does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." Id. As a result, Sago need not petition for transfer to the Supreme Court in order to exhaust his state court claims. Accordingly, I will consider his petition on the merits.

## II. Due Process

After carefully reviewing Sago's claims, I will dismiss his claim because the state has not acted contrary to federal law or made an unreasonable determination of facts. Sago's federal allegations primarily concern due process requirements for revocation proceedings as outlined by the United States Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 486-86 (1972). The Court in Morrissey

identified "two important stages" in revocation proceedings: a "preliminary hearing" and a "revocation hearing." Id. at 485-90.

> With respect to the preliminary hearing before this officer, the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer.

Id. at 487-88. With respect to the revocation hearing, the minimum requirements of due process include

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 488-89.

In his petition, Sago alleges that the state (1) provided insufficient notice that the court would hold a dual hearing for his probation revocation and new charges; (2) failed to hold a preliminary hearing on his probation revocation; (3) failed to consider alternatives to incarceration; and (4) failed to provide a written statement explaining the reason for the revocation. I reject these claims based on the evidence in the record.

First, Sago does not dispute that he received notice that the two hearings would occur on the same day. Instead, he claims that he did not receive notice that the two hearings would be held simultaneously. (See ECF No. 1-9.) He argues that the dual hearing format prejudiced him, because it prevented him from calling a witness, Deputy Dustin Crawford, who was not present when the hearing started. (See ECF No. 15, p. 4.) The state correctly notes that petitioner consented through his lawyer to holding the hearings simultaneously. (See ECF No. 14.) The state also correctly notes that the *subpoena duces tucem* issued for Deputy Crawford listed the correct start time and location of the hearings. Id. Accordingly, the dual aspect of the hearings did not cause Deputy Crawford's absence. Sago otherwise presented witnesses and had all the rights and opportunities required by Morrissey. As a result, I find that he had adequate notice of the hearing.

Second, Sago argues that he was not afforded a preliminary revocation hearing in a prompt manner, as required by Morrissey. Due process requires, "some minimal inquiry," for determining probable cause or reasonable grounds. Morrissey at 485. Such an inquiry must be conducted "as promptly as convenient after arrest while information is fresh and sources are available." Id. "There is no federal law," however, "that requires Missouri to provide Sago with two separate hearings before revoking his probation." (See ECF No. 14.) In Sago's case, a hearing was scheduled on July 22, 2014, eleven days after a warrant was served on Sago for his probation violation. (See ECF No. 1-2.) By Sago's successive requests, the hearing was continued four separate times and finally held on November 5, 2014. Id. Sago cannot seek a series of continuances and then successfully argue that, in granting his requests, the state violated his right to a timely hearing. The state has not violated his right to a prompt preliminary revocation hearing.

Third, Sago argues that the sentencing judge for his probation revocation failed to consider alternatives in sentencing him to imprisonment. It is true that a court must consider alternatives to incarceration when revoking probation for failure to pay a fine. Bearden v. Georgia, 461 U.S. 660, 668-69 (1983). However, "nothing ... requires a sentencing court to state explicitly why it rejected alternatives to incarceration," when revoking probation. Black v. Romano, 471

8

U.S. 606, 611 (1985). Instead, "when other procedural safeguards have minimized the risk of unfairness, there is a diminished justification for requiring a judge to explain his rulings." Id. In Sago's case, the court issued a written statement expressly stating that it had considered alternatives to incarceration. No evaluation of alternatives to revocation is otherwise required. Id.

Fourth, Sago argues that the state failed to issue a written statement as to the evidence relied on and reason for revoking his probation. Sago correctly states that due process in revocation proceedings requires "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Morrissey at 488-89. One reason for this requirement is to create a record sufficient to permit a meaningful review. See, e.g., United States v. Dortch, 923 F.2d 629, 633 (8th Cir.1991). Several United States Courts of Appeals hold that "transcribed oral findings of a district court can satisfy the requirement of a written statement." United States v. Blackshear, 1 F.3d 1242 (Table), 1993 WL 288297, *7(6th Cir. 1993) (and cases cited therein). Eighth Circuit precedence is less clear on the ability of transcribed oral findings to satisfy the written statement requirement.[2]

---

[2] Compare United States v. Smith, 767 F.2d 521, 524 (8th Cir. 1985) (holding that a revocation hearing transcript alone was insufficient to fulfill the written statement requirement) with United States v. Patterson, 946 F.2d 1371, 1372 (8th Cir.1991) (per curiam) (rejecting criminal defendant's claim that the district court failed to make specific findings on his request for an acceptance of responsibility reduction, "when, as here, the record is clearly sufficient to permit a meaningful review by an appellate court.").

Three federal cases suggest that a conclusory written statement, when accompanied by a fact-finding hearing transcript can satisfy the written statement requirement. In Black v. Romano, 471 U.S. 606 (1985), the United States Supreme Court held that "[t]he memorandum prepared by the sentencing court and the transcript of the hearing provided the necessary written statement…." Id. at 616. As a result, the sentencing court had met the due process requirements laid out in Morrissey. Id. In United States v. Smith, the Eighth Circuit considered both the hearing transcript and a conclusory judgment in reaching its holding. 767 F.2d at 524. Because the petitioner in Smith had challenged two grounds for his revocation, however, the United States Court of Appeals was "unable to determine the basis of the district court's decision to revoke probation." The Western District of Missouri discussed this aspect of Smith in Dunlap v. Ledbetter, No. 05-0258-CV-W-FJG-P, 2005 WL 2138242 (Aug. 31, 2005, W.D. Mo.), holding that a conclusory order and hearing transcript together can meet the written statement requirement. Id. at *5-6. Accordingly, I will consider both the written judgment and the hearing transcript in this case.

Here, Sago's revocation judgment states the following, in relevant part:

**05-Nov-2014		Defendant Sentenced**

… Motion for revocation of probation taken up and hearing held. The Court finds the defendant to be in violation of probation, and after

considering the alternatives, the Court hereby orders, probation revoked. Previous sentence imposed. Defendant to be given credit for any jail time served. Defendant advised of his rights under 24.035/29.15 and the Court finds no probable cause to believe that the defendant has received ineffective assistance of counsel. FWC

(ECF No. 1-8, p. 2.) The hearing transcript provides more detail, including the following findings:

> [Sago's] recollection… of what occurred… doesn't jive with the recollection [and] statements of the other [witnesses].
> It's the Court's responsibility to determine the credibility of the witnesses and the testimony they give. And, having considered the, the credibility of the witnesses, the Court finds this [sic] Mr. Johnson is in violation of the conditions of his probation by [sic] the very least by being an accessory, as an accessory for this attempted robbery that took place down in Portageville on the date in question.

(ECF No. 1-12, p. 44.)

Together, the judgment and transcript create a record sufficient to permit a meaningful review on appeal. Unlike in <u>United States v. Smith</u>, 767 F.2d 521, only one ground exists for revoking probation, and the reason for revoking probation is therefore unambiguous. Accordingly, I find that the

state court provided a sufficient written statement "as to the evidence relied on and reasons for revoking parole." Morrissey at 488-89.

### III. Ineffective Assistance of Counsel

In addition to his due process claims, Sago alleges that he suffered ineffective assistance of counsel. To prevail on this claim, Sago must also show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient representation. Strickland v. Washington, 466 U.S. 668, 687 (1984). When scrutinizing counsel's performance, I "must be highly deferential." Id. at 689. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 694. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. Sago claims that his attorney (1) failed to make objections to the dual hearing format, (2) failed to object to "false charges added to [his] file," and (3) failed to present the sentencing court with alternatives to revocation.

Without considering whether Altman performed at or above an objective standard of reasonableness, I find that her performance had no prejudicial effect on Sago. First, as explained above, the dual hearing format did not prejudice Sago. Deputy Crawford's absence was not caused by the dual hearing format, and Sago presented witnesses, cross-examined the state's witnesses, and had all the rights

and opportunities required by Morrissey. Second, I do not find any evidence that false charges were added to Sago's file. The transcript and judgment clearly show that Sago's probation was revoked because he was, at the very least, an accessory for attempted robbery. (ECF No. 1-12, p. 44.) Sago cannot show that the Judge's summary of charges against Sago at the beginning of the hearing, (see ECF No. 1-12, p. 2; ECF No. 1-9, p. 8.), whether accurate or inaccurate, had any effect on the final judgment. Third, I find that Altman sought a specific alternative to incarceration. She recommended that "the underlying charge be settled prior to [probation] being revoked…" Id. at 42. There is no evidence to suggest that Altman would have successfully avoided revocation for her client had she made a different recommendation or presented different evidence. Accordingly, I find that Sago did not suffer ineffective assistance of counsel.

## CONCLUSION

I find that the state did not act contrary to federal law or make an unreasonable determination of facts when it revoked Sago's probation. As a result, Sago's petition for habeas corpus is denied.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Kevin Sago's petition for habeas corpus relief is **DENIED**.

/s/ Rodney W. Sippel
_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 9th day of November, 2017.